All rise. The United States Court of Appeals of the United States Circuit is now in session. Good afternoon and welcome all to the Nakamura Courthouse here in Seattle. It's a pleasure to be here. This is the time set for the case of Project Veritas v. Michael Schmidt. So if counsel are ready to proceed, you may come forward. Chief Judge Merguia, may it please the court, my name is Benjamin Barr. I represent the Project Veritas parties this afternoon. And I'd like to reserve three minutes for rebuttal. Before we wade into rather deep First Amendment waters, I want this court to consider three circumstances. I can't breathe. I can't breathe. Those, of course, were the words issued by Eric Gardner in 2014, caught by a passerby with a cell phone. His altercation and eventual death from the police led to national protest and call for police reform. Or this year, even this month, amateur activist Lauren Windsor, who captured Justice Alito at the U.S. Supreme Court Historical Society, purportedly agreeing that America should return to a place of more godliness. And who can forget this blockbuster? You know, I'm automatically attracted to beautiful. I just start kissing them, it's like a magnet. Just kiss, I don't even wait. And when you're a star, they let you do it. You can do anything. The Project Veritas parties submit that these three examples, as well as the record built below, demonstrate that a journalist's choice about who to record and how to do it implicate important First Amendment concerns. These are items of expressive individual deliberation, and it's what separates government-curated journalism from real journalism. Now, we have two important questions from the court. I'd like to wade into both the scope of the law that's under review, as well as what the Project Veritas parties do, so that I can better answer those two questions. Oregon law is an outlier nationally, unlike 39 states that allow you to freely record the conversations to a party, so-called one-party consent states, or the eight states, nine states, sorry, that allow you to have some expectation of privacy and balanced speech rights. Oregon requires that anyone being recorded must specifically inform those individuals. That is, there must be an announcement. Simply having a device and open presence does not satisfy the law. Now, there are curious exemptions to the law. The first exemption that's problematic is that no announcement is required to be given when police officers performing their duties in public are being recorded. Second, any conversation during which a felony endangering human life occurs need not provide any notice. Now, the Project Veritas parties are national leaders in undercover journalism. Their work has led to settlement agreements at the Federal Election Commission demonstrating violation of federal election law by presidential campaigns, accepting illegal foreign national contributions. Their more recent work has demonstrated biases and discrimination in the educational hiring process. And similar to the briefs submitted by Amici here from animal rights organizations, we would think of this as being otherwise high-value speech at the zenith of the First Amendment. Counsel, you've brought a facial challenge, yes? Yes, Your Honor, we have. And as applied, but facial is the primary focus. And that was the focus of the now-vacated panel decision, right? Yes, Your Honor. And so part of your challenge would be a claim that it is expressive First Amendment conduct. You're in a restaurant. You're chatting with the couple next door. You get to secretly push a button recording that conversation. That's covered by the statute, right? Yes. And you have a First Amendment right, you believe, to do that, and that's the type of expressive conduct the founders intended to protect with Congress shall make no law, et cetera, et cetera, et cetera, about the freedom of speech. Yeah, it's about the First Amendment catching up with technology. Just as a reporter has the ability to write down in his journalist notepad what's occurring in open public space, so too with today's technology do journalists, concerned moms, Black Lives Matter activists have a similar ability. Similarly, you're in the park. You're chatting with a mom and her kids. You get to push the button, record them, and that is expressive, protected First Amendment conduct.  I have a related question because I can't tell from your briefing whether it's your position that private conversations can't take place in public. No, that's not our position. There are certainly provision. There are nine states that provide indicia of a reasonable expectation of privacy about how to figure that out. So in California, for example, one, we're in the park with a family and there's a birthday gathering going on and someone says, hey, I got something to tell you. Come on over here and we remove ourselves from a crowd. We remove ourselves from third parties and then we whisper. Those would be indicia of a privacy concern. So there are states that do that correctly, we think. There are also provisions that already exist in Oregon law that guard for real privacy interests. And part of this argument is exactly focusing on what privacy means. I think it's a very important question that we address head on because we can go back to 1890 when Warren and Brandeis wrote a right to privacy that gave rise to our regular tort that we recognize, invasion of privacy, where it was recognized that news gathering and commenting about items occurring in public wouldn't be swept up in it. We can look to what these other states do by incorporating a reasonable expectation of privacy that comes out of Fourth Amendment jurisprudence, U.S.C. Caps, and its corollary rule is that which you expose to others in public can in no way be deemed private. We have bounds about this. Mr. Barr, I guess in your overbreadth challenge, though, the facial challenge, I think under the First Amendment, it has to be over the protected speech that's prohibited by the statute is overbroad in relation to, substantial overbroad in relation to its plainly legitimate sweep. So you're saying that the plainly legitimate speech that's involved here is only some subset, a minority of the speech that is prohibited by the statute, where there's some affirmative indication of privacy, no matter the context? We're saying that a whole host of newsworthy events occur everywhere in Oregon from a young lady wearing a jihab crossing a street and the idiot next to you starts screaming racial epithets and you don't have, once you tell him that you're recording, he stops shouting, and you certainly probably can't even reach the lady on the other side of the street to be able to get this, or the example cited by the Amici being able to record. Mr. Barr, all those examples, it's not the denominator here in terms of the sweep of the statute. Every, to pick up on Judge Christian's point, every conversation between two persons in public, and your view is that the overbirth of the statute is substantial in relation to, so almost all of those conversations are not private, First Amendment protected. We're talking about the vast majority. And we can look to the last time. Was that a yes? Yes, it was a yes. Thank you. The last time the Supreme Court really wrestled with privacy concerns versus free speech concerns was in the blockbuster Time V. Hill with no less than Richard Nixon failing to persuade the government, the Supreme Court, on behalf of privacy interests. And in concluding that the First Amendment won out there, and they had re-argument, just as we're having re-argument today. In concluding that the First Amendment did win out there, they said a concomitant part of living in public is exposure, just as the Fourth Amendment says, exposure of self to others. And in a nation that values free speech, we put our thumb, we prefer news gathering and speech. And so we don't live in a society where you generally have to be warned that you're going to be photographed when you're in a park. If I'm out at a tourist area. Can I, forgive me for interrupting, but you've done, this is another sort of fundamental question, because your brief often strays into talking about filming in public. And is that another premise that we need to clarify? Are you claiming that this statute sweeps in more than just oral communications? No, it triggers only oral communications, but most recording is done in an audiovisual manner, so it necessarily implicates both. So when I say filming, it's just an easy offhand way to refer to the whole product. But we're talking about audio. Yes, so the scope of Oregon law, Judge Kirsten, you're accurate, is only related to audio conversations. You concede that the statute would not apply to a silent video recording. That is correct, right. And so the fact of the matter is, just going back on the earlier theme, if I'm out at a tourist area, someone might paint me. We don't live in a society where notice or warning has to be given about that. If I'm at a busy intersection in a major city, the news might catch me. And we can look to the common law of what privacy means to figure out where government is at its appropriate level in terms of being able to. I have a question about that. In your brief, and it seems as though today, you're talking mostly about the government's interest in protecting the privacy rights of its citizens. And I think Oregon expressed another interest as well. They talked about protecting the interests of its citizens and just being aware that they're being recorded. Isn't that also a substantial governmental interest at stake here? And you don't seem to be addressing it. Oh, I'd like to address it. Yes, please. Yes, yes, please, Your Honor. Because I think we addressed it in the briefing by trying to draw an analogy to Buckley v. Vallejo. And so if Oregon's argument is to state that they wish to make it more comfortable for others to speak in public by suppressing the speech rights of others, that is entirely foreign to the First Amendment. One can't suppress certain First Amendment activities to bolster others. So, Mr. Barr, to take Buckley, this is a disclosure requirement, simply saying I am recording you. It's not consent. And Buckley itself subjects that to intermediate scrutiny. So why don't we do that here? Because the damage here in terms of being able to report is more severe, the terms of the disclosure is more severe than what occurs in the instance of campaign finance law. Not all campaign finance disclosure cases are upheld. A majority of them are under intermediate scrutiny. But here the type of injury that we're thinking about is, if we think about Upton Sinclair, the famous muckracker, back in the early 1900s, going into those food packing plants, getting ready to right the jungle. And we don't have portable recording technology at the time. So the correct analogy would be to say every time having a law in place that says every time the boss says we have a certain amount of rotten food going off and I want to write that in the journal, I have to give notice to my boss, I'm writing down that we have 20 pounds of rotten flesh going out. Boss, I'm writing down, the stories would never be had. Well, they were had. There's quite a history of very successful investigative journalism in this country that didn't rely on hidden gadgets. And if the law required him to give notice, we would never have that today, Judge Christian. The analogous provision today is the iPhone, the secret recording device. Why not? Why can't investigative reporters simply interview people, make their observations, and report on what they saw or heard? Because it destroys the candidness and truthfulness of the moment. No one is going to believe about the murder of George Floyd unless they actually see it. That would fall within an exception that's in the statute, wouldn't it? Yeah, that would. But there's a whole host of important information otherwise. The First, Third, and Seventh Circuits all agree that audiovisual recordings provide the most exceptional and important way to preserve evidence to be able to demonstrate that to the public. But there are other, you know, I think, as I understand, the statute has other exceptions for, let's say, a public demonstration or a public speaker. And so that's not covered under what's being challenged here either. This really seems to just be more narrowly focused on conversational privacy between two individuals in public and whether someone has that right to record it without notice. It's difficult to imagine this as conversational privacy. These are floating privacy bubbles of some sort. An argument between an Antifa member and a Proud Boy member on the streets in Portland is in no way private, yet notice has to be given to them. Can I follow up on that? Because your briefing says several places, primarily, your reporters intended to record in public, but not exclusively. And today you've only talked about recording in public. Right. And so I think, you know, it's difficult to imagine the full scope. But as for what we pled in the court below, the recordings were all demonstrated to be in public. So for the public records advocate, it was in open-air cafes and on streets and in public parks. And for doing work recording the protesters and police, that was either at protests or in areas surrounding it to be able to get candid, valuable information. Just to be clear, my understanding is that your position is that your client ought to be able to make these kinds of unnoticed recordings also in private areas and not be limited to public areas. That's what your briefs say. Well, yeah. I don't know. Part of it is the difficulty in knowing what Oregon means by private areas. We're certainly not alleging any right to eavesdrop. Oregon has an eavesdropping provision. We've affirmatively stated that in our proceedings. And so I guess we really have to hone in on what a private area is. I can tell you from experience and from compliance work with the client that in states that have reasonable expectation of privacy provisions, it doesn't violate those laws and doesn't record in truly private circumstances. But what Oregon says is private, a loud argument between two radical protesters in a park, yeah, it wants to record there. Now, there's been a lot of briefing here and a lot of discussion about Wasden, which I think is an important First Amendment decision by this court in 2018, striking down, of course, parts of Idaho's ag-gag law. But I think if you want to answer the first question that was put forward to us, the real golden gem that you guys produced in 2010, because it's doctrinally pure, is Anderson v. City of Hermosa Beach. Now, Wasden's terrific. It shows you the work that investigative journalism does. It shines a light on big ag, and it shows the abuses that happen to animals. It's heartfelt, it's compassionate, and it's terrific. But the analysis is a little short on First Amendment doctrine. But once we go back to Anderson, Anderson looks to Spence, I think correctly, from the Supreme Court. And Spence, of course, is the case where there's a superimposed peace symbol on an American flag. And Anderson says, well, look, we're looking at this tattoo ban by the City of Hermosa Beach, and we're going to look at the different steps. We put a needle into an arm, probably not expressive. We're going to put some ink in there, maybe. The business of tattooing, not expressive. But when we look at the end product, that magic mushroom from the Grateful Dead, well, that looks like art, protected under Burstyn, under the First Amendment. That seems like it. And what we don't want to do, the Ninth Circuit reasons, per Spence, is to look at individual steps that lead up to a pure expression and then disaggregate them, because it makes it too easy for government then to be able to regulate. Now, imagine if we had a different rule, if that had gone a different way. Government would be able to place a tax on ink for newspapers, but the Supreme Court said no to that in Minneapolis Star. It would be able to ban contributions and limit independent expenditures, but the Supreme Court said no to that in Buckley, in Citizens United. I think your point's well taken, but if I can jump in here. I think that we understand that. I think it's a point that is made clearly in the briefing here. But you're talking about something different. You're not talking just about using a recorder and likening it to the typewriter that produces a book or the ink that produces a newspaper. You're talking about surreptitious recording, and that layers, it seems to me, an entirely different aspect of complexity here that you're not acknowledging. And I don't think your brief, your supplemental brief, if I could just ask you this question, then I'll get out of your way to answer it. You lean heavily on Wasden, and understandably so, but I don't think you acknowledge anywhere City of Austin. Sure. So those are two big questions, and I'll dissect those, if I may. On the first half of this, it's important to notice the scope of Oregon law. Oregon law prohibits unannounced recording. And when we challenge it both as to being able to do it surreptitiously or just have a cell phone out on a table, as is common in a lot of recordings done there. And this isn't just about Project Veritas going in and gotcha on video. This is about trends like it's happening nationwide, moms who have children coming home from school that are disabled, autistic, and they give them recording devices to be able to provide evidence that are they being beat up and who did it. And they are being beat up, and this is producing great information. It's about the right of the female secretary who's being sexually harassed by her boss to be able to record that in an open lobby, and no one's going to believe her until they see it. Mr. Barr, I guess just to focus the analysis, I think, at least I think Judge Christin and I may be trying to get at is, so again, assume that there's something that triggers speech clause scrutiny. How do you get to the content-based? How would this statute be content-based as opposed to a time, place, and manner restriction on the conduct of surreptitiously recording? Sure. And Judge Christin asked specifically about Austin, and so there's been some point of concern over exactly how strict the test is for content-based restrictions. I think that's a fair question. And, of course, in Reed, we knew that differentiating between political and ideological signs for purposes of signs was a content-based restriction that was stricken, and in the city of Austin, off-premises, on-premises signs were deemed content-neutral. Now, the Supreme Court says in Austin that there's a good reason for that. We have a history and tradition, which First Amendment case law respects, that when we're dealing with signs, especially with traffic concerns, we have to examine content. And if it's dealing with those situations, we're going to allow that to occur. We have more recently, just this last week, the Supreme Court decided Elster on trademark provisions and finds that to be content-based and upholds it because of tensions between property interests and free speech interests not relevant here. But, you know, does away simply with that, saying a government bureaucrat has to review an actual trademark application, look at a descriptive name, Trump Too Small was the one at issue there, and decide whether it's in or whether it's out. And even Austin still says that courts have to pay attention to whether the law in question is targeting the underlying substantive message. And this comes back to the opening of oral argument, where a journalist or a concerned mom points the lens of her camera, where she puts her microphone, how she does that, just as how a painter decides to brush his strokes, what subject he decides to do, whether he tells them about it or not, or a photographer captures candid moments in a park or stage moments matter dramatically. They are imbued with First Amendment concern and choices. If I choose to do a full stream of police accountability videos, hurrah, that's a good thing to do, that sends a particular message. Where does this statute then draw that content line? You've given us several examples. Is it noticed recording versus unnoticed recording? Is that the content-based distinction? Because I don't think there's much for us to work on in terms of the content of the eventual publication, whatever that may be. Is that the line you draw, noticed versus unnoticed recording? The line is between noticed and unnoticed. So the law allows more generous recording provisions for the police. Representative Lou Frederick in 2015, who sponsored the amendment, said this brings trust and accountability to government. And in our polarized times, we need this more than ever. And so that's terrific, but that's sticking one toe in the water. We need the whole foot. Okay, but the police exception is not noticed or unnoticed. The police exception is subject to a different, it doesn't require specifically informing the person that you're recording. It just requires that the recording be open. So that doesn't seem to square up with a content-based distinction between the unnoticed recording and the implicitly noticed recording of police. I would respectfully disagree, Your Honor, because if I have to give notice to a public records advocate, and I've befriended him at a Starbucks open-air cafe, and I want to develop a relationship, as undercover reporters do, and solicit a story about this, they're unlikely to be able to share that information if they know that they're being recorded and they're being told, just as a police officer is probably not so willing to commit abuse, kill someone, or engage in unlawful activity if you've told them you're recording. Now, we've pledged in the court below that we wish to do both secret and just simply unannounced open recording. That's part of our complaint and our request for relief. Counsel, if we could get you to focus on the question that my colleagues are trying to ask you about how you get to content-based here. It seems to me that what you're arguing is that the restriction... I think, if I could summarize, I think your argument is that the statute allows people to openly record police officers in public but not other types of public officials or other people in public, and that content you view as content restriction. Is that fair? Yes, because... Okay, so here's my question. The case law in that body of case law, we have cases like Consolidated, Edison, Simon & Schuster, Boos v. Berry. These are all discussed in the brief. Well, maybe not all of them quite. But I'm trying to figure out how your case is anything like those, where an entire swath, an entire subject matter is taken out of the marketplace. Well, it's two sets. It's both the police and then it's conversations during felonies and endangering human life. Those are both content triggers. And what the Supreme Court has been clear about is that even incidental burdens on First Amendment conduct are still noteworthy and still important for consideration. But the Supreme Court has very recently said just because there's an incidental burden on speech doesn't mean that a regulation is content-based. Right. So this here is, you know, if we agree that what a journalist chooses to write about, such as Miami Herald v. Tornilio, a matter of editorial and journalistic discretion, this should be every bit as much a point of First Amendment concern as it would be there. Because I can choose all of these different particular subsets of government accountability or, you know, with animal rights activists, different forms of agricultural abuse, and that message that I convey is where I point the lens and where I put the microphone and how I do it. And government doesn't give marching orders to journalists to tell them. Could I ask it this way? What do you think is your strongest case law supporting the position that you think these exceptions are content-based? No, I think if you can turn a direct corollary to Wasden and say, look. Okay, so hold on. If you're relying on Wasden, forgive me for interrupting, but this is the question you keep not quite answering. I want to get there, Your Honor. I appreciate that. You're relying very heavily on Wasden. What about the city of Austin? Is it your position that that doesn't change, undercut Reed? Reed, of course, is what Wasden relied upon. Yeah. No, city of Austin is a special consideration. And it says specifically, these are signs. We're dealing with signs. So we're going to give special latitude. We have to look at contents of signs, and we look to tradition in history. And so when we have a signed ordinance that comes up, we're going to give a little more birth there. But even just this last week, Elster from the Supreme Court, we're looking at the communicative, the substantive message. Austin still says, the city of Austin still says, we have to pay special attention to is a particular message having a First Amendment burden being applied against it, having an injury applied against it. What about, sorry. Please, Your Honor, I see my time is just about up, so I'd like to hear your question. What about Porter, our case in Porter? If you will refresh me of the facts in Porter. Well, it seems like the regulation that involved examining the context of the speech was nevertheless deemed content neutral because the challenge regulation applied even-handedly to all and did not single out certain kinds of speech or different treatment. That was a Ninth Circuit decision. I appreciate that. I'm not up to speed on it. That's the honking case. From what you've just described, it's the lens of analysis. Journalistic choices on the street to be able to decide, am I going to film George Floyd? Am I going to film the public records advocate? That sends a message, and it sends a message to the public, and it has to be protected at the front end. Otherwise, we don't have protection on the other end. Let me ask you another question. This just puzzles me because maybe somewhere in state case law, this is defined, but is conversation defined anywhere in the statute or otherwise by state law? It is defined, if you give me a moment. It's the transmission between two or more persons of an oral communication. That's not telecommunications or radio. It includes communications occurring through videoconferencing. That's Oregon Revised Statute 165.535. I see my time is beyond up. Otherwise, I would reserve my time for rebuttal unless you would like me to address a point. You can answer the question. You still have a minute and a half. Oh, I'm sorry. I thought I read the clock wrong.  So it's a pretty wide-reaching. Are you saying that that definition is overbroad? I mean, is that your argument, that it applies more broadly than what we might ordinarily understand the word conversation to mean? Well, I think that that's part of the argument. It certainly gives more breadth to it. But simply the fact that government intrudes and requires someone to carry a message and destroys the spontaneous nature of that ability to get the message out is what's at stake here. And this is a law that's unlike anything else in the nation. States have worked on balancing hard privacy, true privacy interests, borrowing from Fourth Amendment jurisprudence. It can be done here. And I think that we're on good grounds to be able to say that each of these individual steps are protected by the First Amendment, and that by deciding, by government giving instructions about what's easier to film and what's harder to film, and by removing certain content from ultimate publication, that does real injury to the First Amendment. And I think that you should reinstate the opinion below. I thank you for your time today, Your Honors. May it please the Court. Benjamin Gutmann appearing on behalf of the Appellees. The First Amendment doesn't protect the right to secretly record someone else's speech. Oregon's ban is a content-neutral regulation of the manner of making recordings. But this goes quite a bit beyond secret. I mean, we've talked a lot about secret and surreptitious, but this applies to someone who, in public, sees an argument between people on the street and pulls out a phone. They would violate this statute, a criminal statute, correct? It might, depending on the circumstances. I assume it's not a cop performing official duties, which is one of your exceptions, but it's just two people having a loud political conversation, whatever conversation, on the street, and someone takes out a cell phone. They're a criminal in the state of Oregon. If the participants in the conversation are not specifically informed, correct. Now that, I should also point out... Even though they're out in public, they have no expectation of privacy. They're shouting to the earshot of everyone around in public, and they have a privacy right against the recording of that conversation? What they have is a right to not to speak in a way that creates a record for other people to listen to. Maybe they could go off privately and whisper silently. They certainly could. If they are imposing their voice to the hearing of people who are in public where they are entitled to be, why can't people make a record of what they are being subjected to, what they hear? Well, and in some circumstances they can. If it's a public event, then open recording is allowed under the statute. But if... I think the point is that... But where does it say that? I'm questioning whether what Judge Collins is describing is a conversation within the meaning of this act. Well, it might be or it might not be, depending on exactly what was happening, but I'm referring to subsection 6 of section 165.540, which allows unconcealed recording of public or semi-public meetings, but then it includes a long list of things that fall within that, including rallies, sporting, and other events. So depending on the circumstances, that might apply. I think what Judge Collins is talking about is some of the examples that your opposing counsel gave were just two people who see each other dressed in symbolizing certain tense issues of the day and just start screaming at each other in public. Right, I think that would probably be a conversation and would probably not fall within the, you know, a public or semi-public meeting, and so the requirement that they be specifically informed applies. And the reason for that is that I think there are two different aspects of privacy that we sometimes are conflating here. One is the privacy of not sharing information with somebody beyond the intended recipient, but the other is the aspect of privacy that involves individual autonomy to decide what audience you're going to address. And there is a difference. ...proudly in a certain manner and doing it in a way... ...opposed to your friend that... ...opposed to your friend that... ...that they're also challenging if you want to record that, and that's part of what they want declared unconstitutional, right? Correct, and so... So in addition to two people yelling in public, it's also you're conversing with someone quietly... ...identify, you know, some instances, even discrete categories that might be problematic. That doesn't necessarily mean that the statute is facially unconstitutional. I think you noted in your brief that the standard has to be for them to win facially. There has to be a lopsided ratio in their favor between what is protected and what isn't protected. Correct. The First Amendment. That's what United States v. Hansen says, and that in the absence of that sort of lopsided ratio... Is it, I mean, in a modern urban setting where there's a lot of people around walking down the street, I guess you can't take out a cell phone because it's going to be impossible not to pick up conversation of people passing by. One of the amicus briefs talked about, you know, taking videos of people, you know, rafting, and it's impossible not to capture the conversations that happen as people pass through the scene. Well, you can capture the video without audio, which is one way that the statute does allow that. And I do think, I mean, that may be something that you have to... So in the state of Oregon, you can only do silent videos in urban areas where people are talking down the street. You can't do... You can't... Even though people are walking in public, talking in public, you can't video with audio. I don't think that's true as a categorical rule, but I certainly think that will be true in some circumstances. Again, if it's... If people pass by and one is speaking to the other, that's a conversation. Yes. And they're not within an exception, and you didn't announce it. And so taking a video of just an open public scene with people walking by is illegal in the state of Oregon. You think that it's consistent with the First Amendment? Yes. And if you think that that's a problem under the First Amendment, that's a very specific set of circumstances that doesn't invalidate the rest of the legitimate... The problem is that, you know, you keep talking about surreptitious and, you know, privacy where you don't want other people to hear, but that's not the statute you've written. You have a statute that just sweeps in everything with just unannounced, and you could focus it more specifically on where there's an expectation that other people, you know, are not hearing the conversation or some expectation of privacy. You could tailor this better, but it's not here. Well, I don't... I think it could be tailored more closely to protect the privacy interest in not having other people hear the conversation, but it's very well tailored to the interest that I think is also a privacy interest, but you could call it an autonomy interest, of not creating speech. When somebody is recording someone else's speech, the recording that's being created is a form of speech that involves the speech of the person who is speaking, and they have a right to know if they... They certainly have an interest in knowing if they are contributing to the creation of that speech, and that's what this law is tailored to protect. Now, if you incidentally capture, you know, somebody else... Why equal it to video? So could you then, in your view, have a statute that forbids taking video of people walking by because they didn't consent to have you make art of them? Well, I don't think it would involve the same degree... I don't think it would involve the same set of interests. There's a distinct interest in the freedom not to speak, which I think is implicated by this statute and wouldn't be implicated by a statute that regulated video. I don't... Circuits have recognized this, right? Several circuits have recognized that we have different interests when we're talking about our image in public, if we go out into public, that there isn't an expectation of privacy for our... to be photographed, because we're out there. Right? Quite different than our speech. Correct. And as I say, it wouldn't implicate the freedom not to speak that I think is really at the core of what this statute is trying to protect. Counsel, do I have the scienter of this statute right? It requires willful conduct? I think it probably requires knowing conduct, and there's no mental state written into this statute, but it's... Oregon law generally requires mental state for all criminal offenses. This is in Chapter 161 of the Oregon Revived Statutes. It's 161.095 and 161.115 and a few other ones around that. But essentially what those say is that when a statute doesn't specify a mental state, a mental state is still required, and case law essentially says that it turns on whether it's a conduct element or a circumstance element. The willfulness is when you're not a party in 165.543. Yes, yes. So I have that wrong.  But 165.541c, which is the section we're talking about, doesn't specify a mental state, but I think the mental state would be knowing under Oregon law that you knowingly are obtaining another conversation. And so if you incidentally... You know, you were taking a video of your kids in a park and you didn't realize that there was somebody else having a conversation nearby and you incidentally captured that, I don't think that would be a crime under Oregon law. Mr. Gutman, I wonder if you could help me sort out some of the facial versus as-applied challenges. Your friend didn't press the as-applied, but as I'm looking at the complaint here, I see six different as-applied challenges, situations. I think five of the six all involve Project Veritas being a party to the conversation. And it's unclear to me in terms of how this works, I guess, what the scope of... When it becomes... Where the eavesdropping line is, if they're not a party. So almost all of the examples we've talked about today have been instances where the recorder is not a party, but we wouldn't, you know, at least consider the heartland of Project Veritas' complaint. So what's the line there between what's covered by this statute and where eavesdropping begins? So this statute applies equally to both. I mean, it's obtaining or attempting to obtain the whole or part of any conversation by means of a device if not all the participants are specifically informed. So that, it applies to eavesdropping, it applies to participants to which the recorder is... conversations to which the recorder... And that would go to the facial challenge. But with respect to the as-applied challenges, I think at paragraphs 28, 29 of the complaint, almost all of the as-applied challenges involve Project Veritas as being a part... a party to the conversation, except for when Project Veritas was secretly recording interactions between the police and protesters. Yeah, there is, though, another statement in the complaint, and I don't recall which paragraph it is, where Project Veritas said they don't intend to eavesdrop, they only intend to record their own conversations. So I know they give that example. I think the key point, though, with the complaint is that if you look at the prayer for relief, what you'll see is that whether it's labeled facial or as-applied, they want the statute enjoined as to the organization. They are not... They have not targeted a specific set of activities that they are seeking relief for, and they haven't shown that they have a really... a ripe claim as to those. So what doctrine do we apply there? Are we applying the facial over-breath doctrine, which requires substantial over-breath in relation to the statute's legitimate sweep?  OK, so that's with respect to the facial challenge. And I think you could, if you... Yes, and I think you could take them at their word that essentially this is a facial challenge and that's what they're... Well, I ask that because their as-applied challenge in most of the complaint are about conversations to which they are the party, which couldn't possibly satisfy a facial over-breath challenge if the protected speech they're asserting are only conversations in which they're involved. I think that's probably true. You could look at the First Circuit's analysis in the Project Veritas v. Rollins case, which concluded that... that essentially that they hadn't... that they didn't have a justiciable as-applied claim because of the way they had pleaded it, and I think... I think that would be the same here. Can I follow up with you just briefly on...  The district court appeared to recognize some concessions that the state made with respect to the open but unnoticed recordings, and I think two of their challenges relate to that. One relates to... In both cases, if they're trying to interview either protesters or public officials and secret recordings is impractical, they say they also seek open but unnoticed recordings. Did the state concede that those would be covered by a broad reading of the public or semi-public meetings in 6A? I think the state did... did take a fairly broad view of what the public meetings would be. There's not a lot of case law on this. There aren't... there are really hardly any prosecutions in that kind of scenario, so there's not a lot of case law about what that means. There is one case from the Oregon Court of Appeals, I think it might be State v. Bischel, B-I-C-H... B-I-S-H-C-E-L, maybe, that says that a meeting is not... is something more than a mere encounter. So I think if we have any guidance on what the line is between what's a public meeting and what's not, or a private meeting and what's not a meeting, it's the idea that a meeting, I guess, has some intentionality about coming together. For example, the 6A exemption for events or rallies. So if Project Veritas is at... and I think this may be an important bit to clarify the State's concession here. If Project Veritas is at a protest and they're interviewing openly, not secretly, but openly, and this is also one of their claims, they're putting cell phones in people's faces and asking questions or even recording discussions between police and protesters. Would that be covered by the exception under public meetings? Yes. Yes, and in fact, they don't even have to put the cell phone in the face. For a public or semi-public event like a rally, it just requires that it be done in an unconcealed manner. Okay, and then what about with respect to... I think the example they gave is the public records advocate. If they are in a public place talking to the public records advocate with the phone out, would that be covered by the State's broad reading? It depends on... I'd need to know a few more facts. So, I mean, from what I understand from what my friend was describing, these might be meetings that were set up, you know, sort of befriending a public records advocate, inviting them out for a coffee at an open-air cafe. That would be, I think, at least a private meeting, which the statute says unconcealed recording is allowed as long as all the participants knew or should have known that they were being recorded. Could I ask you to follow up on something you were briefing, that the State briefed about? Recordings are not inherently expressive conduct. I was having a hard time figuring out what sort of line you would draw in that regard. You know, there's been much discussion about recording being a precursor to expressive conduct and that it's generally inextricably intertwined, but your point is that recording someone else's conversation isn't the same thing unless it's imbued with some sort of expressiveness itself. So explain to me how you would draw that line between those two things. Well, to be fair, I don't think the line is very clear. The Supreme Court hasn't really given us a test and the circuit decisions from around the country don't all necessarily... They sort of advert to First Amendment principles but don't necessarily apply a particular test. But what I think we... The point that we were trying to make is that not all recordings are expressive conduct for purposes of the First Amendment. There can be recordings that, because of the way they are made, are inherently expressive because they're essentially a director, like a movie director type thing where a person's making intentional choices about what to record and how to record it and that that could be expressive conduct sort of in itself. And that there also may be a First Amendment right to record certain matters of great public interest, recording the police engaging in official conduct openly, for example. And really the point that we were trying to make was just that, you know, even accepting that both of those categories of protected conduct exist, the statute still covers a great deal of conduct that wouldn't fall within anything like that. Passively recording, passively... Well, I appreciate your acknowledgment that we don't have a test on this issue and that perhaps, I think, as you argue in your briefing, that all audiovisual recordings may not be expressive conduct that's protected under the First Amendment. What would you have this panel, this en banc panel of the court do with this issue specifically? What test would you have us adopt and how exactly would we draw the lines so that, you know, obviously what this court decides on this issue will and can be used by litigants that come after you? So I think that the test that the court could adopt would be that the First Amendment is triggered if the recording itself involves expressive conduct, there's sufficient intentionality in the way that the recording is being made, artistic choices in the way that the recording is being made, that it qualifies as expressive conduct. What if there's intentionality? Let's say your friend on the other side mentioned investigative journalism. If there's an intentionality that the information gathering will lead to publication of that information, is that always covered in that case? I think it would normally be covered. But that would just say that we're then in, I would say, intermediate scrutiny land because we have a content-neutral regulation of the manner of making those recordings. So that's our primary argument. I mean, one thing that the court could do is simply assume that all or most of this is covered by the First Amendment. Isn't that what Wosden did? I mean, and Wosden, I think, assumed without deciding that the recordings are expressive conduct and went straight to the analysis under intermediate scrutiny. That would be fine with us here, too. Well, is it your position that Wosden went too far? And we should clarify. I'm not sure if you're in response to Judge Desai's question. You've left me unsure about your position. Sorry. There are statements in Wosden that I think go further than they need to go. But if Wosden was merely assuming without deciding that all recordings are protected by the First Amendment, I mean, I think you could probably make a similar assumption and still uphold this law under intermediate scrutiny. I'm a little bit confused by that because my understanding is that you can have conduct that is potentially expressive but not necessarily expressive. My understanding is that's your argument here, that surreptitious recording can be expressive but it also can be done for non-expressive purposes, like extortion, just record-keeping, and those would not be intended to convey a message to an audience. Right. And then we have a content-neutral regulation of conduct that can be expressive but is not necessarily. The test seems to be quite clear. We apply O'Brien intermediate scrutiny as long as the statute is content-neutral. So we don't have to assume that all expressive recording is... Excuse me. You don't have to assume that all surreptitious recording is expressive to apply the test that we apply to statutes that are content-neutral regulations that have an impact on expressive conduct. So I guess I'm a little bit confused about your doctrinal argument here. No, I think that's right. I guess I'm suggesting there's another path to get to intermediate scrutiny as well, which is to... Even assuming that some or all of this is pure speech for purposes of the First Amendment, this is still a content-neutral manner regulation, and so that would still be intermediate scrutiny. It wouldn't be O'Brien intermediate scrutiny, but I think it would essentially amount to the same thing. So I think those are two different paths to get to the same analysis. It sounds like you're having a difficult time. Go ahead, Judge Lee. Can you address whether the law is content-neutral or content-based restriction? I mean, obviously, particularly the exception for law enforcement matters. I mean, that does seem like it's a content-based restriction because obviously it's going to relate to law enforcement issues by allowing people to tape, without an announcement or consent on those type of recordings. So a law is content-based or is not content-neutral if it turns on the communicative content of the recording, which means either the topic or the message being conveyed, and neither of the exceptions at issue here turn on the topic or the message. They turn on the circumstances under which the recording is made. But what do we do about read? Because in read, it seems like a regulation that treated speech differently depending on its message was content-based regardless of the government's benign motive. Correct. So why isn't permitting recordings of law enforcement officers but not city, like, records clerks treating speech differently depending on its content? Because it's not the content of the speech being recorded, it's the circumstances under which it's being recorded. So it's true that it's going to have to involve a police officer on duty, and that may tend to involve certain kinds of conversations, but the exception doesn't turn on the words that are recorded. How do you distinguish the speaker? I think read, Citizens United, many other cases, say that speaker discrimination can be just as bad as content discrimination to get us to strict scrutiny. Yeah, I mean, I think that can be a problem, but here, I mean, to me the proof is that you could have exactly the same recording of exactly the same conversation, and it would or wouldn't fall within this exception based on things that have nothing to do with the recording itself. So this is not an exception for any conversation involving a police officer. It's a police officer on duty in public being openly recorded. Doesn't that make it more content-based? I'm thinking of Stevens here, which is distinguishable, but it dealt with criminal animal cruelty, a specific crime. We have similar definitions here, felony endangering human life, the police exception, which does have all of these special conditions that have to be met. Doesn't that get us close to content-based? Well, the conditions all have to do with the circumstances, not the actual conversation that you're recording may end up having very little to do with the policeman's duties or anything like that. So that's what makes this not content-based. I guess... If I may interrupt, suppose the law said you can't secretly record someone without any announcement, but carved an exception for labor union officials in their official capacity. Wouldn't that be content-based restriction? I think it probably would be. This is, again, I think much narrower, and I guess to the extent that there's a content nexus here, it's a content nexus that comes from the First Amendment doctrine itself. I mean, the origin of this exception was the legislature recognizing that courts around the country, including this court, have recognized a right to record the police in public, and so trying to craft an exception that met that. It's true that you're talking about matters of public interest versus matters that are not of public interest. That itself is content-based, but that's First Amendment doctrine. We also know that the Supreme Court has very recently reminded us that just because there's an incidental burden on speech doesn't mean it's content-based. That's correct. And what we have in Fordyce and every other circuit that has discussed whether members of the public should be allowed to record, video record police in public, all of them have said that the First, including us, that the First Amendment demands that. And it's not a matter of per city of Austin. It's not a matter of suppressing speech or favoring speech. It's a matter of public accountability. Yes, and I think, Judge Kristen, your dissent noted that even if you severed this off, and I'm happy to address severance, it wouldn't change what's actually allowed because the First Amendment would still protect, you know, the activity that this exception is covering. But can I ask you before, if you're going to read severance, I'd like for you to sort of square city of Austin with Reed, if you could. Yeah. I mean, I think they're both... There's some language maybe from Reed that city of Austin maybe slightly walks back, but both of them are essentially applying the same test, which is that if the regulation turns on the communicative content, the topic or the message, then it's content-based. So in Reed, what you had was different rules depending on whether you're advocating for or against, you know, something happening in an election or signs telling people where to go. That's the communicative content of... The suggestion from Reed is that if you have to look at the content to figure out if the statute applies, then it's content-based. And city of Austin clearly tells us that is not the test. Correct. So I think there are maybe some sentences in Reed that city of Austin has clarified or walked back a bit. Are there other things that you think city of... To answer Chief Judge Murguia's question, are there other things that you think city of Austin walks back? Well, I think it refocuses the analysis on whether the law is drawing distinctions based on communicative content, not sort of some... You mean favoring content, favoring message? Correct. Communicative content, that sort of begs the question, that's the whole... We're doing a content-based inquiry here, so that doesn't help. Yes, it says the topic... Certain topics or a message being conveyed, that's what makes something content-based is if the law privileges or disadvantages certain topics or a certain message being conveyed. And, again, we also think... I mean, if you think that either of these exceptions is problematic, Judge Christian's dissent correctly laid out the severability analysis. Severability is the rule in Oregon, and the only exceptions are if the remaining parts of the statute couldn't stand on their own or if it's apparent that the legislature wouldn't have enacted them on their own. So how would you deal with the tension if those provisions were severed with the established law of recording police officers in the line of duty? It would mean that there were circumstances under which the law couldn't constitutionally be applied. Again, I think that's something that the dissent pointed out correctly. There's sort of an irony of you sever this off and then you would have a valid as-applied charge. You'd have a court order saying that this is allowed in probably pretty much the same circumstances that the legislature had said. So I think that kind of points at the absurdity of having to sever off the police officer exception. But severance is the rule under Oregon law, and it's apparent that the legislature would have enacted the rest of the statute without it. It did. It did decades earlier. Decades earlier, correct. And if you had asked the legislature in 1989 or in 2015, your choice is repeal the statute entirely or not enact this exception that you're thinking about enacting. Because you're saying that if the exceptions were stricken, they'd be put back in as sort of constitutionally required. And yet, I understand your argument. You've not contested that if strict, that if content-based strict scrutiny applies, that it wouldn't survive. Well, even though you're saying you're drawing a line that's required by the Constitution, you conceded that it wouldn't survive strict scrutiny. If it's content-based, yeah, correct. But the correct approach in that circumstance is to sever the exceptions, and then I guess it's up to the courts to determine case-by-case as applied which recordings are protected or not, as opposed to having the legislature tell people which recordings are protected. Counsel, did I hear you say that Wasden assumed but did not decide that video and audio recordings are not protected by the First Amendment? So as I read it, I think Wasden said that they are protected. Yes, I would think that it says so pretty clearly. Yes, I think it was Judge Desais who was suggesting that they were protected.  It certainly wasn't necessary for the court to say that all recordings are protected in order to reach its holding. What Judge Desais was trying to get you to address is if you think Wasden needs to be clarified, how would you clarify it and what test ought we adopt? I think the best way to clarify it would be to say that even, you know, although many or most recordings trigger First Amendment scrutiny, there is a... It hits its limit when you are talking about somebody else's speech rights, somebody else's freedom not to speak. And that's what makes this case different. There are First Amendment interests on both sides of the balance here. Unless the court has any other questions. Thank you. You are out of time, but I'll give you a minute to respond. Thank you. In a minute, I will quickly address a few points that were raised. I think Judge Collins' observation here is directly on point. This is one of the broadest recording laws in the nation, and it's dangerous. This is raised in the Craigus Brief that describes all sorts of scenarios someone on the ground has encountered, and it's described in our briefings below of all the spontaneous circumstances and all the information that flows in the public arteries of America and in Oregon and on the streets of Portland that they want to capture, not just in protests, outside of protests where people share a little more candid information, not where government tells you to go to speak, but in other areas where you can elicit helpful information that provides all the sort of social gains that only investigative journalism does in America. I think WASDN has the right framework here. I think if you analyze the farm as the scene in WASDN and you can't have any contact recorded here, the scene is much broader. It's a day-to-day life, and you can't capture and report on important information to the American public. I believe this Court's opinion should be reinstated. Thank you, Your Honors. Thank you, Mr. Barr and Mr. Gutman, for both of your oral argument presentations. Very illuminating. The case of Project Veritas v. Michael Schmidt is now submitted, and we are adjourned. Thank you all. Thank you. Court stands adjourned for the day.
judges: MURGUIA, WARDLAW, CHRISTEN, BENNETT, COLLINS, LEE, SUNG, SANCHEZ, DESAI, JOHNSTONE, ALBA